TRACY L. WILKISON
Acting United States Attorney
BRANDON FOX
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4536
    Facsimile: (213) 534-5400
    E-mail:   joseph.johns@usdoj.gov
SONIA W. NATH (DC Bar No. 997095)
Special Assistant United States Attorney
Associate Chief Counsel for Enforcement
U.S. Food and Drug Administration
    10903 New Hampshire Ave. WO31-4568
    Silver Spring, MD 20903
    Telephone: (301) 796-8708
    E-mail:   sonia.nath@fda.hhs.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:21-cr-00026-SVW |
|     Plaintiff, | PLEA AGREEMENT FOR DEFENDANT HEMATOLOGY ONCOLOGY CONSULTANTS, GP |
|       v. | |
| HEMATOLOGY ONCOLOGY CONSULTANTS, a California General Partnership, | |
|     Defendant. | |

    1.   This constitutes the plea agreement between HEMATOLOGY ONCOLOGY CONSULTANTS, GP ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This Agreement is limited to the USAO

1   and cannot bind any other federal, state, local, or foreign
2   prosecuting, enforcement, administrative, or regulatory authorities.
3       2.   Defendant understands and agrees that this Agreement is
4   part of a "package deal" in which the disposition of the case against
5   defendant is tied to and conditioned on the disposition of cases
6   against two other defendants, namely, Mark Goldstein and Stanley
7   Rossman.  Accordingly, defendant and the USAO agree that this
8   Agreement and the obligations it creates will not become binding on
9   the USAO or defendant unless and until: (a) defendant executes this
10  Agreement and enters a guilty plea in accordance with this Agreement;
11  and (b) Mark Goldstein and Stanley Rossman execute their respective
12  plea agreements with the USAO and enter guilty pleas in accordance
13  with those agreements.  Defendant acknowledges that an authorized
14  representative of defendant has discussed with defendant's attorney,
15  and carefully considered, the possible advantages and disadvantages
16  to defendant of entering into this Agreement as part of the package
17  deal; defendant is entering into this Agreement as part of the
18  package deal freely and voluntarily because this Agreement and the
19  package deal is believed to be in defendant's best interests; and
20  defendant is not entering into this Agreement as part of the package
21  deal because of threats, coercion, or other undue influence by the
22  USAO or by the other defendants who are part of the package deal,
23  their counsel, or anyone acting on their behalf.

24                  <u>RULE 11(c)(1)(C) AGREEMENT</u>

25      3.   Defendant understands that this agreement is entered into
26  pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).
27  Accordingly, defendant understands that, if the Court determines that
28  it will not accept this agreement, absent a breach of this agreement

by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 18, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement.  Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 24 and 25, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

<u>DEFENDANT'S OBLIGATIONS</u>

4.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One of the Information in the form attached to this agreement as Exhibit A, or a substantially similar form, which charges defendant with Receiving Prescription Drugs Imported Contrary to Law, in violation of 18 U.S.C. § 545.

b.   Not contest facts agreed to in this Agreement.

c.   Abide by all agreements regarding sentencing contained in this Agreement.

d.   Appear for all court appearances and obey any other ongoing court order in this matter.

e.   Agree that all court appearances, including arraignment, change of plea hearing, and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-043 or another order, rule, or statute. Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), defendant may have the right to have its representative be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Section 15002(b) of the CARES Act to proceed with its change of plea hearing by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with its sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this Agreement.

4

g.   Be truthful at all times with the United States Probation and Pretrial Services Office, all federal agencies, and the Court.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>FORFEITURE AND FINANCIAL ACCOUNTABILITY</u>

5.   Defendant further agrees:

a.   To the entry as part of defendant's guilty plea of a money judgment of forfeiture against defendant in the amount of $650,000, which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis. Defendant understands that the money judgment of forfeiture is part of defendant's sentence, and is separate from any fines or restitution that may be imposed by the Court.

b.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal and equitable defenses to the money judgment of forfeiture in any proceeding on any grounds including, without limitation, that the money judgment of forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that entry of the money judgment of forfeiture is part of the sentence that may be imposed in this case and waives any failure by

the Court to advise defendant of this, pursuant to Federal Rule of
Criminal Procedure 11(b)(1)(J), at the time the Court accepts
defendant's guilty plea.

THE USAO'S OBLIGATIONS

6.   The USAO agrees to:

a.   Not contest facts agreed to in this Agreement.

b.   Abide by all agreements regarding sentencing contained
in this agreement and affirmatively recommend to the Court that it
impose sentence in accordance with paragraphs 15 and 16 of this
agreement.

c.   Not pursue any additional criminal charges against
defendant for violations of federal law arising out of defendant's
conduct described in the agreed-to factual basis set forth below.
Defendant understands that the USAO is free to prosecute defendant
for any other past conduct or any unlawful conduct that occurs after
the date of this Agreement.

PARTNERSHIP AUTHORIZATION

7.   Defendant represents that it is authorized to enter into
this Agreement.  On or before the date of entry of its plea of
guilty, defendant shall provide to the USAO and the Court a notarized
legal document certifying that defendant is authorized to enter into
and comply with all of the provisions of this Agreement.  Such
partnership resolution shall designate a partnership representative
authorized to take these actions, enter a plea on defendant's behalf,
and indicate that all partnership formalities for such authorizations
have been observed.

ORGANIZATIONAL CHANGES AND APPLICABILITY

8.   This Agreement shall bind defendant, its successor partnership or corporation, if any, and any other person or entity that assumes the liabilities contained herein ("successor-in-interest").   No change in name, change in partnership or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this Agreement.   Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this Agreement.

RESPONDEAT SUPERIOR

9.   The parties stipulate and agree that under principles of corporate liability and respondeat superior, as these principles apply in this case, defendant is liable for the actions of its agents and employees.   New York Central and Hudson River R.R. v. United States, 212 U.S. 481, 495 (1909); United States v. Beusch, 596 F.2d 871, 877-878 (9th Cir. 1979); United States v. Hilton Hotels Corporation, 467 F.2d 1000, 1004-1007 (9th Cir. 1972).

NATURE OF THE OFFENSES

10.   Defendant understands that for defendant to be guilty of the crime of Receiving Prescription Drugs Imported Contrary to Law, in violation of 18 U.S.C. § 545, the following must be true: (1) Merchandise, in particular prescription drugs, had been brought into the United States contrary to 21 U.S.C. § 331(d), and (2) an employee of the defendant, operating within the scope of his or her employment, and motivated, at least in part, by an intent to benefit defendant, received and bought the prescription drugs knowing that they had been brought into the United States contrary to law.

1

<u>PENALTIES AND RESTITUTION</u>

2      11.  Defendant understands that the statutory maximum sentence

3  that the Court can impose against a corporation or partnership for

4  the crime of Receiving Prescription Drugs Imported Contrary to Law,

5  in violation of 18 U.S.C. § 545, is: five years of probation; a fine

6  of $500,000 or twice the gross gain or gross loss resulting from the

7  offense, whichever is greatest; and a mandatory special assessment of

8  $400.

9

<u>SUSPENSION/REVOCATION/DEBARMENT</u>

10      12.  Defendant understands that if defendant holds any

11  regulatory license or permit, the conviction in this case may result

12  in the suspension or revocation of such license and/or permit.  By

13  this Agreement, the USAO makes no representation or promise

14  concerning suspension or debarment of defendant from contracting with

15  the United States or with any office, agency, or department thereof.

16  Suspension and debarment of organizations convicted under various

17  federal regulatory protection and criminal statutes is a

18  discretionary administrative action solely within the authority of

19  the federal contracting agencies.

20

<u>FACTUAL BASIS</u>

21      13.  Defendant admits that defendant is, in fact, guilty of the

22  offense to which defendant is agreeing to plead guilty.  Defendant

23  and the USAO agree to the statement of facts attached hereto as

24  Exhibit B to this Agreement and agree that this statement of facts is

25  sufficient to support a plea of guilty to the charge described in

26  this Agreement and to establish the Sentencing Guidelines factors set

27  forth in Paragraph 15 below but is not meant to be a complete

28

8

1  recitation of all facts relevant to the underlying criminal conduct
2  or all facts known to either party that relate to that conduct.

3  <u>SENTENCING FACTORS AND AGREED-UPON SENTENCE</u>

4     14.  Defendant understands that in determining defendant's
5  sentence the Court is required to calculate the applicable Sentencing
6  Guidelines range and to consider that range, possible departures
7  under the Sentencing Guidelines, and the other sentencing factors set
8  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
9  Sentencing Guidelines are advisory only.

10     15.  Defendant and the USAO agree to the following applicable
11  Sentencing Guidelines factors, as directed by U.S.S.G. §§ 8C2.3 and
12  8C2.4:

| | | |
|---|---|---|
| Base Offense Level: | 20 | [U.S.S.G. § 2T3.1(a)(1); 2T4.1; Application Note 2] |
| Acceptance of Responsibility: | -2 | [U.S.S.G. § 3E1.1(b)] |
| <u>Total Offense Level</u>: | 18 | |
| <u>Guideline Base Fine</u>: | $600,000 | |

16     16.  Pursuant to 18 U.S.C. §§ 3561, 3571(d), 18 U.S.C.
19  3013(a)(2), Chapter 8 of the Sentencing Guidelines and the factors
20  set forth in Title 18, United States Code, Sections 3553(a) and 3572,
21  including the nature and circumstances of the offense and the history
22  and characteristics of the defendant, the need for the sentence
23  imposed to reflect the seriousness of the offense, to promote respect
24  for the law, to provide just punishment for the offense, to afford
25  adequate deterrence to criminal conduct, and to protect the public
26  from further crimes of the defendant, the parties agree that
27  defendant shall be sentenced as follows:

a.   <u>Probation</u>: Defendant shall be sentenced to probation for a term of one year with standard conditions as set forth in General Order No. 20-04.

b.   <u>Criminal Fine</u>: In accordance with 18 U.S.C. § 3571(d), Defendant shall pay a total criminal fine of $600,000.  All payments shall be made by certified check or wire transfer to the Clerk of the United States District Court for the Central District of California. The parties stipulate and agree that the alternative fine provision in 18 U.S.C. § 3571(d) authorizes the imposition of a fine in the amount to which the parties have agreed.

c.   <u>Criminal Forfeiture</u>: The entry of a money judgment of forfeiture against defendant in the amount of $650,000, which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis.  Defendant understands that the money judgment of forfeiture is part of defendant's sentence, and is separate from any fines or restitution that may be imposed by the Court.  Defendant agrees to pay and satisfy the $650,000 amount within ten days of entry of the money judgment of forfeiture.

d.   <u>Special Assessment</u>: Defendant shall pay a total special assessment of $400.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

10

c.    The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

g.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF STATUTE OF LIMITATIONS</u>

18.  Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for the offense prior to the filing of the information alleging the offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

1

<u>WAIVER OF APPEAL OF CONVICTION</u>

2      19.  Defendant understands that, with the exception of an appeal

3  based on a claim that defendant's guilty pleas were involuntary, by

4  pleading guilty defendant is waiving and giving up any right to

5  appeal defendant's convictions on the offenses to which defendant is

6  pleading guilty.

7

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

8      20.  Defendant agrees that, provided the Court imposes the

9  sentence specified within paragraphs 15 above, defendant gives up the

10  right to appeal any portion of the sentence.

11      21.  The USAO agrees that, provided the Court imposes the

12  sentence specified in paragraphs 15 above, the USAO gives up its

13  right to appeal any portion of the sentence.

14

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

15      22.  Defendant agrees that if, after entering a guilty plea

16  pursuant to this Agreement, defendant seeks to withdraw and succeeds

17  in withdrawing defendant's guilty plea on any basis other than a

18  claim and finding that entry into this plea agreement was

19  involuntary, then (a) the USAO will be relieved of all of its

20  obligations under this Agreement; and (b) should the USAO choose to

21  pursue any charge or any civil, administrative, or regulatory action

22  that was either dismissed or not filed as a result of this Agreement,

23  then (i) any applicable statute of limitations will be tolled between

24  the date of defendant's signing of this Agreement and the filing

25  commencing any such action; and (ii) defendant waives and gives up

26  all defenses based on the statute of limitations, any claim of pre-

27  indictment delay, or any speedy trial claim with respect to any such

28

action, except to the extent that such defenses existed as of the
date of defendant's signing this Agreement.

EFFECTIVE DATE OF AGREEMENT

23.   This Agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

BREACH OF AGREEMENT

24.   Defendant agrees that if defendant, at any time after the
signature of this Agreement and execution of all required
certifications by defendant, defendant's counsel, and an Assistant
United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this Agreement ("a breach"), the USAO
may declare this Agreement breached.  All of defendant's obligations
are material, a single breach of this Agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this Agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered guilty plea pursuant to this Agreement, defendant will not be
able to withdraw the guilty plea, (b) the USAO will be relieved of
all its obligations under this Agreement, in particular, the USAO:
(i) will no longer be bound by any agreements concerning sentencing
and will be free to seek any sentence up to the statutory maximum for
the crimes to which defendant has pleaded guilty; and (ii) will no
longer be bound by any agreements regarding criminal prosecution, and
will be free to criminally prosecute defendant for any crime,
including charges that the USAO would otherwise have been obligated
to dismiss or not to criminally prosecute pursuant to this Agreement,

and (c) the USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

25. Following the Court's finding of a knowing breach of this Agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this Agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this Agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this Agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this Agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

1          COURT AND PROBATION OFFICE NOT PARTIES

2          26.  Defendant understands that the Court and the United States

3    Probation Office are not parties to this agreement and need not

4    accept any of the USAO's sentencing recommendations or the parties'

5    agreements to facts, sentencing factors, or sentencing.  Defendant

6    understands that the Court will determine the facts, sentencing

7    factors, and other considerations relevant to sentencing and will

8    decide for itself whether to accept and agree to be bound by this

9    agreement.

10         27.  Defendant understands that both defendant and the USAO are

11   free to: (a) supplement the facts by supplying relevant information

12   to the United States Probation Office and the Court, (b) correct any

13   and all factual misstatements relating to the Court's Sentencing

14   Guidelines calculations and determination of sentence, and (c) argue

15   on appeal and collateral review that the Court's Sentencing

16   Guidelines calculations and the sentence it chooses to impose are not

17   error, although each party agrees to maintain its view that the

18   calculations and sentence referenced in paragraphs 15 and 16 are

19   consistent with the facts of this case.  While this paragraph permits

20   both the USAO and defendant to submit full and complete factual

21   information to the United States Probation Office and the Court, even

22   if that factual information may be viewed as inconsistent with the

23   facts agreed to in this agreement, this paragraph does not affect

24   defendant's and the USAO's obligations not to contest the facts

25   agreed to in this Agreement.

26               NO ADDITIONAL AGREEMENTS

27         28.  Defendant understands that, except as set forth herein,

28   there are no promises, understandings, or agreements between the USAO

15

and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

//

//

//

//

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

29.   The parties agree that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Chief, Criminal Division


*Joseph O. Johns* 2/2/21
JOSEPH O. JOHNS                                    Date
Assistant United States Attorney


*Mark Goldstein*                        1-19-2021
MARK GOLDSTEIN, M.D.                    Date
Authorized Representative for
Defendant Hematology Oncology
Consultants

*Stanley Rossman, MD*                   01/19/2021
STANLEY ROSSMAN, M.D.                   Date
Authorized Representative for
Defendant Hematology Oncology
Consultants


                                        1/28/01
DOUGLAS A. AXEL                         Date
Attorney for Defendant Hematology
Oncology Consultants

1

<u>CERTIFICATION OF DEFENDANT</u>

2          This Agreement has been read to me in its entirety.  As the

3   authorized representative of the partnership defendant, I have had

4   enough time to review and consider this Agreement, and I have

5   carefully and thoroughly discussed every part of it with Hematology

6   Oncology Consultants' attorney.  On behalf of the partnership

7   defendant, I understand the terms of this Agreement, and I

8   voluntarily agree to those terms.  I have discussed the evidence with

9   Hematology Oncology Consultants' attorney, and its attorney has

10  advised me of the partnership defendant's rights, of possible

11  pretrial motions that might be filed, of possible defenses that might

12  be asserted either prior to or at trial, of the sentencing factors

13  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

14  provisions, and of the consequences of entering into this Agreement.

15  No promises, inducements, or representations of any kind have been

16  made to me or the partnership defendant other than those contained in

17  this Agreement.  No one has threatened or forced me or the

18  partnership defendant in any way to enter into this Agreement.  I am

19  satisfied with the representation of Hematology Oncology Consultants'

20  attorney in this matter, and the partnership defendant is pleading

21  guilty because it is guilty of the charges and wishes to take

22  advantage of the promises set forth in this Agreement, and not for

23  any other reason.

24

25  MARK GOLDSTEIN                          1-19-2021
    Authorized Representative for           Date

26  Defendant Hematology Oncology
    Consultants

27

28

18

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Hematology Oncology Consultants' attorney.  I have carefully and thoroughly discussed every part of this Agreement with my client.  Further, I have fully advised my client of its rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this Agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this Agreement; no one has threatened or forced my client in any way to enter into this Agreement; my client's decision to enter into this Agreement is an informed and voluntary one; and the factual basis set forth in this Agreement is sufficient to support my client's entry of guilty pleas pursuant to this Agreement.

_____          _____
DOUGLAS A. AXEL                           Date
Attorney for Defendant Hematology
Oncology Consultants

**EXHIBIT A**

```
                    FILED
             CLERK, U.S. DISTRICT COURT

                  2/8/2021

          CENTRAL DISTRICT OF CALIFORNIA
          BY:          JB          DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>HEMATOLOGY ONCOLOGY<br>    CONSULTANTS, a California<br>    General Partnership,<br>MARK GOLDSTEIN, and<br>STANLEY ROSSMAN,<br><br>          Defendants. | CR No.  2:21-cr-00026 -SVW<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 545: Receiving<br>Prescription Drugs Imported<br>Contrary to Law; 21 U.S.C.<br>§§ 331(c) and 333(a)(1): Receipt<br>of Misbranded Drugs in Interstate<br>Commerce and Proffered Delivery<br>Thereof For Pay; 18 U.S.C. §§ 545<br>and 982 and 28 U.S.C. § 2461(c):<br>Criminal Forfeiture] |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 545]

[Defendant HEMATOLOGY ONCOLOGY CONSULTANTS]

On or about June 2008 through on or about October 20, 2011, in

Los Angeles County, within the Central District of California, and

elsewhere, defendant HEMATOLOGY ONCOLOGY CONSULTANTS, a California

General Partnership, knowingly received and bought merchandise,

namely, misbranded and unapproved new drugs, after their importation,

knowing the merchandise to have been imported or brought into the

United States contrary to law.  Specifically, defendant HEMATOLOGY ONCOLOGY CONSULTANTS received and bought misbranded and unapproved new drugs, namely Altuzan, knowing that such merchandise had been imported into the United States without being listed for commercial distribution, as required by Title 21, United States Code, Section 352(o), in violation of Title 21, United States Code, Section 331(a), and without being approved by the United States Food and Drug Administration, as required by Title 21, United States Code, Section 355(a), in violation of Title 21, United States Code, Section 331(d).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[21 U.S.C. §§ 331(c), 333(a)(1)]

[Defendants GOLDSTEIN and ROSSMAN]

From on or about June 2008 through on or about October 20, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants MARK GOLDSTEIN and STANLEY ROSSMAN received in interstate commerce, and caused the receipt in interstate commerce, of misbranded drugs, namely, misbranded and unapproved Altuzan, and delivered and proffered the delivery thereof for pay, and caused the delivery and caused the proffered delivery thereof for pay.

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 982(a)(2)(B) and 545]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 545, and Title 28, United States Code, Section 2461(c), in the event of any of the defendant's conviction of the offense set forth in Count One of this Information.

2.    Any defendant so convicted shall forfeit to the United States the following:

        (a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense;

        (b)  Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

        (c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred,

4

sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Two of this Information.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense of conviction; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in

1  value; or (e) has been commingled with other property that cannot be

2  divided without difficulty.

3

4                              TRACY L. WILKISON
                               Acting United States Attorney
5

6

7                              BRANDON D. FOX
                               Assistant United States Attorney
                               Chief, Criminal Division
8

9                              JOSEPH O. JOHNS
                               Assistant United States Attorney
                               Chief, Environmental and Community
10                               Safety Crimes Section

11                             SONIA W. NATH
                               Special Assistant United States
12                               Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

<u>FACTUAL BASIS IN SUPPORT OF PLEA AGREEMENT</u>

At all times material and relevant to the information filed in this matter:

1.    Hematology Oncology Consultants ("defendant") was a California General Partnership located in West Hills and Van Nuys, California.

2.    Mark Goldstein and Stanley Rossman were oncologists who were partners in defendant, either in their individual capacity and/or through a professional corporation.

3.    From approximately 2008 through 2011, defendant purchased discounted oncology drugs from Montana Healthcare Solutions, a business that sourced drugs from foreign markets.  The foreign market drugs violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 <u>et seq.</u>, insofar as they were, *inter alia*, (a) misbranded under 21 U.S.C. § 352(o) because they were not listed with the FDA for commercial distribution in the United States; (b) unapproved new drugs under 21 U.S.C. §§ 321(p), 355(a); and (c) brought into the United States in violation of 21 U.S.C. §§ 331(c) (receipt in interstate commerce and the proffered delivery for pay or otherwise of a misbranded drug) and 331(d) (introduction into interstate commerce of an unapproved new drug).

4.    In March 2009, a Special Agent from the FDA's Office of Criminal Investigations ("FDA-OCI") visited defendant's office and spoke with the office manager who said she could not remember purchasing drugs from the supplier under investigation, and only purchased drugs from "approved distributors."

5.   From June 2008 through October 2010, defendant purchased over $1,000,000 of drugs from Montana Healthcare Solutions. In October 2010, Montana Healthcare Solutions was acquired by Canada Drugs, Ltd. ("Canada Drugs"). On April 13, 2018, Canada Drugs pleaded guilty to illegal sales of misbranded and counterfeit prescription drugs that were unapproved in the United States.

6.   Defendant's office manager placed the orders for the foreign market prescription drugs with Montana Healthcare Solutions in part because they were lower in price than the prescription drugs available from domestic suppliers.  The office manager – and thereby, defendant – knew that at least some of the drugs purchased from Montana Healthcare Solutions were illegal foreign market prescription drugs.

7.   Many of the invoices from Montana Healthcare Solutions indicated that the drugs were meant for foreign markets, such as Turkey or the European Union, and some of the invoices identified the drugs by different names.  For instance, in an invoice to defendant dated March 17, 2011, Montana Healthcare Solutions listed one of the items purchased as "Altuzan (bevacizumab) (known as Avastin in the U.S.) (Refrigerated) – Turkey- 400mg/16ml – 1 vial."  The invoice provided that the product would be shipped to defendant at its business address in the Central District of California. The drug "Altuzan" was not approved by the FDA, and was not listed with the FDA as a drug meant for commercial distribution in the United States.

8.   Defendant's last purchase from Montana HealthCare Solutions was on October 20, 2011.  In February 2012, Montana Healthcare Solutions notified defendant that some of the Avastin  it had shipped to defendant during the period of October 5, 2011 to October 21, 2011

(invoice numbers 60645 and 61417) likely consisted of counterfeit Avastin that did not contain the medicine's active ingredient, bevacizumab.